UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LENWORTH A. BUNTING, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:14-cv-00621-VAB |
| | : | |
| KELLOGG'S CORPORATION and | : | |
| MICHAEL GOSS | : | |
| Defendants. | : | |

**RULING ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Lenworth Bunting, brought this action against his former employer, Kellogg's

Corporation ("Kellogg's"), and Michael Goss, who was a Distribution Center Manager at Kellogg's

facility in Newington, CT during the times relevant to this lawsuit.  Mr. Bunting asserts two causes

of action against both defendants.  He first alleges discrimination on the basis of race in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII").  He also alleges

that defendants discriminated against him on the basis of his age, in violation of the Age

Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq*. ("the ADEA").

Defendants, Kellogg's and Goss, move for summary judgment on all of Mr. Bunting's

claims.  For the reasons that follow, the motion is GRANTED.

**I.    Factual Allegations**

The relevant facts are taken from defendants' Local Rule 56(a)(1) Statement and Exhibits

attached to the Local Rule 56(a)1 Statement, ECF No. 36, and the plaintiff's Local Rule 56(a)(2)

Statement, ECF No. 41.  *See* D. Conn. L. Civ. R. 56(a).

The Court notes that Plaintiff's Local Rule 56(a)(2) statement does not contain any citations

to the record and does not comply with the requirement that any denials of facts in a non-movant's

Local Rule 56(a)(2) statement "be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." Local Rule 56(a)(3). In the absence of such citations, the Court may "deem[] certain facts that are supported by the evidence admitted." Local Rule 56(a)(3); *see Dolan v. Select Portfolio Serv.*, No. 03-CV-3285, 2016 WL 3512196, at *1 n. 4 (E.D.N.Y. June 22, 2016) ("Where a party either (i) admits or (ii) denies without citing to admissible evidence facts alleged in the opposing party's Local Rule 56.1 Statement, the Court shall deem such facts undisputed."); *see also Cashman v. Ricigliano*, No. Civ. 3:02CV1423(MRK), 2004 WL 1920798, at *1 n.2 (D. Conn. Aug. 25, 2004) (deeming facts in a Local Rule 56(a)(1) Statement admitted because the opposing party did not file a Local Rule 56(a)(2) Statement); *August v. Dep't of Corrections*, 424 F. Supp. 2d 363, 365 n.2 (D. Conn. 2006) (same); see also *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (in adjudicating summary judgment, courts "must be satisfied that the citation to evidence in the record supports the assertion"). Accordingly, the Court deems the facts in the Defendant's Local Rule 56(a)(1) statement admitted, to the extent that the facts are supported by the record.

Plaintiff began his employment at Kellogg's Newington Distribution Center in 2005. Def.'s L. R. 56(a) Stmt., ECF No. 36, at ¶16. In March 2012, Kellogg's posted an opening for a "Warehouse Manager" at the Newington Distribution Center. *Id.* at ¶20. Mr. Goss was the "Hiring Manager" for Kellogg's as it conducted this search. *Id.* Kellogg's hired a third-party recruiter, The Right Thing, to assist in filling the position. *Id.*

Kellogg's used a three-level hiring process to select the Warehouse Manager. First, the Right Thing posted the job, collected applications, and screened applicants. Defs.' L. R 56(a) Stmt. at ¶¶22-23. Then, it passed those applicants who met the minimum qualifications to Mr. Goss. *Id.* Mr. Goss screened these candidates and interviewed several of them. *Id.* at ¶27. After those interviews, one applicant was selected for the final review stage, a "panel review" interview with Mr. Goss and

two of his associates, Regional Director Michael Demmers and Transportation Manager Tom Veroneau.  *Id.* at ¶¶29-31.

On June 11, 2012, Kellogg's cancelled the initial listing for the Warehouse Manager position, because it was dissatisfied with the candidate pool.  Def.'s L. R. 56(a) Stmt. at ¶43; *see also* Warehouse Manager Requisition (LOG000044), Def. Ex. 14, ECF No. 36-14.  The Right Thing reposted the job with an offer of "relocation assistance" to attract more candidates.  Def.'s L. R. 56(a) Stmt. at ¶44; *see also* Warehouse Manager Requisition (LOG000123) Def. Ex. 15, ECF No. 36-15. Mr. Bunting applied to the original position but not to the second position.  *Id.* at ¶47.  The Right Thing continued to consider Mr. Bunting for the re-posted position.  Morris Decl., Def. Ex. 13, ECF No. 36-13 at ¶5.  However, Mr. Bunting was not aware of the new position or of the fact that he remained a candidate.  Pl.'s L. R. 56(a) Stmt., ECF No. 41 at ¶48.

On June 11, 2012, Mr. Bunting received an e-mail implying that he had already interviewed for the position and indicating that he would not be moving forward to a panel interview.  Def.'s L. R. 56(a) Stmt at ¶49; Goss Decl., Def.'s Ex. 11, ECF No. 36-11 at ¶10.  On June 12, 2012, one day after receiving this e-mail, he contacted Mr. Goss to describe the problem.  Pl.'s L. R. 56(a) Stmt at p. 20, ¶7.  Mr. Goss told Mr. Bunting that the e-mail was sent in error.  Goss Decl. at ¶10.  Plaintiff also mentioned the problem to Kellogg's staffing and to Karen Morris of The Right Thing.  Def.'s L. R. 56(a) Stmt. at ¶¶53-54.  Ms. Morris corrected Mr. Bunting's log on the "TALEO" hiring database to reflect the fact that The Right Thing was still considering Mr. Bunting for the job, despite the erroneous e-mail.  *Id.* at ¶54.  *See also* Morris Decl. at ¶7.

Mr. Goss allegedly interviewed several candidates for the position and passed one along to the panel review stage.  Goss Decl. at ¶7.  The parties have only provided to the court a detailed review of one of these initial interviews—Mr. Goss's interview with Mr. Bunting on July 6, 2012. *See* Bunting Interview Questions, Def.'s Ex. 9, ECF No. 23-9.  At that interview, Mr. Goss asked Mr.

3

Bunting eight questions and recorded his impressions of Mr. Bunting's answers on a worksheet. *See Id.* Mr. Bunting claims that this interview was "ad hoc" and did not amount to a face-to-face interview with Mr. Goss. *See* Pl.'s Mem. Opp. Mot. S. J., ECF No. 42, at ¶24; Pl.'s L. R. 56(a) Stmt. at ¶41.

Mr. Bunting's initial interview occurred after Kellogg's conducted the only panel interview for the Warehouse Manager position. Goss Decl. at ¶7; Linnell Interview Questions, Def. Exh. 10, ECF 23-10 (identifying date). On July 5, 2012, Bradley Linnell, an external candidate for the position, completed his panel review. *Id.* At the panel review, Mr. Linnell did a presentation and answered the same eight questions that Mr. Bunting answered in his interview with Mr. Goss. *See Id.* At some point in July 2012, Kellogg's offered the Warehouse Manager position to Mr. Linnell. Goss Decl. at ¶11.

Mr. Goss recommended Mr. Linnell for advancement to the panel review stage, and eventually for the position, "because he had retail experience and direct store delivery … experience," had received relevant educational training, and had worked as a Logistics Manager, onsite Logistics Manager/LTL Transportation Manager and Transportation Analyst. Goss Decl. at ¶8. Mr. Linnell had a Bachelor's of Science degree in Business with a focus on transportation and logistics and a Master's degree in Business Administration with a focus on supply chain management. *Id.* Ms. Morris of Do the Right Thing believed that Mr. Linnell was a "dream" candidate and a "perfect fit for the position," although Mr. Goss and his colleagues at Kellogg's made the final decision to hire Mr. Linnell. Morris Decl. at ¶¶8-12.

When he applied for the position, Mr. Bunting had worked as a Supply Station Systems Manager at Hartford Hospital for six years. Bunting Resume, Def. Ex. 3, ECF 36-3. He also had approximately six years of experience at Kellogg's. *Id. See also* Pl.'s L. R. 56(a) Stmt. at ¶38. At Kellogg's, Mr. Bunting worked as a "lead Person" or "unit leader" in the warehouse. Pl.'s Mem.

4

Opp. Mot. S. J. at p. 21; Bunting Dep., Def.'s Ex. 12, ECF No. 36-12 at 48:10-19; Pl.'s L. R. 56(a) Stmt. at ¶¶16-17.  In this position, he supervised storeroom staff, developed works schedules, monitored daily assignments and processed payroll and performance appraisals.  Pl.'s L. R. 56(a) Stmt.at ¶38.  Mr. Goss felt that Mr. Bunting "had some supervisory experience, but it was in a hospital setting, and not lengthy or recent."  Goss Decl. at ¶9.  Mr. Bunting had a Bachelor's of Science degree in Business Administration and Finance, but did not have other advanced degrees. Generally, Mr. Goss believed that Mr. Bunting's "overall qualifications were not close to those of Mr. Linnell" and did not recommend that Mr. Bunting progress further in the hiring process.  *Id.*

Mr. Goss's interview notes reflect his belief that Mr. Bunting answered six of the eight questions "effectively" at Bunting's July 6, 2012 interview.  Bunting Interview Questions, Ex. 9, ECF No. 36-9.  He did not rate Mr. Bunting's response to the final two questions.  *Id.*  Mr. Goss noted that Mr. Linnell answered seven questions "effectively" and one "highly effectively" at Linnell's July 7, 2012 panel review.  Linnell Interview Questions, Ex. 10, ECF No. 36-9.

Plaintiff does not allege that Mr. Goss or any of the other members of the panel "ma[de] any reference" to Mr. Bunting's age or race during the hiring process.  Bunting Dep. at 85:2-19.  He does not allege that these decision-makers made any comments that were "derogatory to older workers" or "racially derogatory."  *Id.*  Similarly, Mr. Bunting noted that Mr. Goss did not mention race or age at the interview and did not say anything "inappropriate." *Id.* at 122:8.  At his deposition, Mr. Bunting agreed that, in his view, "[Mr. Goss]'s poor judgment," rather than "[Mr. Bunting's] skin color," dictated the decision to hire another candidate.  *Id.* at 276:17-19.

At some point during the hiring process, Mr. Goss asked Mr. Bunting whether he "*really* want[ed] the position?"  Pl.'s L. R. 56(a) Stmt. ¶27.  In another conversation, Mr. Goss told the Plaintiff that one of the "biggest problems with the position was the salary." *Id.*

Mr. Bunting made repeated complaints to Michael Goss about unfair treatment.  He also used

the "my HR" feature on Kellogg's website to complain about the claimed discrimination in hiring at four separate moments in June and July 2012.  Pl.'s L. R. 56(a) Stmt. p. 21-22, ¶9.  On October 15, 2012, he filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging race discrimination.  *Id.  See also* Charge of Discrimination, Def's Ex. 7, ECF no. 36-7.  On February 4, 2014, the EEOC issued a right to sue letter to Mr. Bunting.  *See* Dismissal and Notice of Rights, Pl. Ex. 13, ECF No. 42 at 67.

## II.   Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that no genuine issues of material fact remain in dispute and that it is thus "entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  A fact is "material" if it "might affect the outcome of the suit under the governing law" and a factual issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the record, this Court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citations omitted).   If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is inappropriate.  *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004); *Anderson*, 477 U.S. at 250 (summary judgment is proper only when "there can be but one reasonable conclusion as to the verdict").

Where one party is proceeding *pro se*, the Court reads that party's papers liberally and interprets them "to raise the strongest arguments that they suggest."  *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal citations omitted).  Yet, even a *pro se* plaintiff cannot defeat a motion

for summary judgment by relying solely on the allegations of a complaint. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996).

## III.    Discussion

Mr. Bunting alleges that the Defendants discriminated against him based on his race, in violation of Title VII, and on his age, in violation of the ADEA.  The Court addresses each of these claims in turn.

As a preliminary matter, the Court notes that Mr. Bunting's claims against Michael Goss fail as a matter of law.  Neither Title VII nor the ADEA permit claims against fellow employees or supervisors, like Mr. Goss.  *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir. 1995) ("While a narrow, literal reading of the agent clause in § 2000e(b) does imply that an employer's agent is a statutory employer for purposes of liability, a broader consideration of Title VII indicates that this interpretation of the statutory language does not comport with Congress' clearly expressed intent in enacting that statute."), abrogated on other grounds, *Burlington Ind. v. Ellerth*, 524 U.S. 742 (1998); *Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 266 (D. Conn. 2010) ("[T]his District has consistently held that there is no individual liability under the ADEA").   Only Mr. Bunting's claims against his employer, Kellogg's, can survive as a matter of law.

### A. Race Discrimination

Mr. Bunting's race discrimination claim against Kellogg's is subject to the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  The *McDonnell Douglas* burden-shifting framework requires a plaintiff to "first satisfy an initial burden of proving by the preponderance of the evidence a prima facie case of discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).  The prima facie case creates a presumption that the employer unlawfully discriminated against the employee, thus placing upon the defendant "the

7

burden of producing an explanation to rebut the prima facie case—*i.e.*, the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

If Kellogg's carries this burden of production, the presumption raised by the prima facie case is rebutted and the burden shifts back to Mr. Bunting to prove discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 507-08 (internal quotation marks and citations omitted).  He can meet this burden by persuading the trier of fact "that a discriminatory reason more likely than not motivated the employer, [or] that the employer's proffered explanation is unworthy of belief" and thus leads to the inference of discriminatory intent.  *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180-81 (2d Cir. 1992); *St. Mary's Honor Ctr.*, 509 U.S. at 511("rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination").  Mr. Bunting has not provided sufficient evidence to suggest that Kellogg's reasons for not hiring him as Warehouse Manager were discriminatory or pretexts for discrimination.

In order to make out a prima facie case of discrimination, Mr. Bunting must show that: (1) he was a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Terry*, 336 F.3d at 138.  Mr. Bunting has made out a prima facie case of discrimination, but Defendants argue that Kellogg's had a legitimate nondiscriminatory reason for selecting Mr. Linnell rather than Mr. Bunting for the Warehouse Manager position: Mr. Linnell's superior qualifications.  Def.'s Br. in Supp. Mot. S. J., ECF No. 35-1, at 11.

Kellogg's argues that Mr. Linnell was more qualified than Mr. Bunting.  This argument is supported by undisputed record evidence that Mr. Linnell had more managerial experience than Mr.

Bunting and also had an advanced degree with a specialized educational training in Supply Chain Management.  As a result, a reasonable person could conclude that Mr. Linnell was more qualified for the Warehouse Manager position.  *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (supporting a finding of pretext only when "the plaintiff's credentials [are] so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question") (internal citations omitted).

While Mr. Bunting argues that Mr. Goss undervalued his managerial experience— particularly his experience in warehouse management rather than transportation management—at Kellogg's, s*ee* Pl.'s Mem. Opp. Mot. S. J. at p. 22, ¶4(f); Pl.'s L. R. 56(a) Stmt. at ¶33, the Court "must respect the employer's unfettered discretion to choose among qualified candidates." *Byrnie*, 243 F.3d at 103 (internal quotations omitted).

At *McDonnell Douglas*'s final step, the burden shifts once again to Mr. Bunting.  For his case to continue, Mr. Bunting must offer admissible evidence that would persuade a rational factfinder that Kellogg's was motivated by racial discrimination, or that its "proffered reason" for hiring Mr. Linnell "was not the true reason for the employment decision." *Tyler*, 958 F.2d at 1181.  Mr. Bunting has not pointed to any evidence in the record suggesting that Kellogg's was motivated by racial discrimination.  In *Byrnie*, the court denied summary judgment when an employer offered "inconsistent" explanations for a hiring decision and the record revealed "countervailing evidence" that discredited the employer's explanations.  *Byrnie*, 243 F.3d at 106.  Mr. Goss was clear, specific, and consistent when he explained his hiring decision.  Just as significantly, the record in this case does not reveal discrepancies or other evidence that would call into question Kellogg's credibility in its assessment of the two candidates.

9

Despite the lack of such record evidence, Mr. Bunting argues that three procedural irregularities in Kellogg's selection process suggest that he was not allowed to compete for the Warehouse Manager position in violation of Title VII's mandate against racial discrimination. While neither his filings nor any statements made at oral argument provide a legal basis for this position, the Court nevertheless analyzes this argument and concludes that it is insufficient to sustain Mr. Bunting's claim of discrimination.

First, Mr. Bunting erroneously received an e-mail from Kellogg's outside hiring consultant, The Right Thing, indicating that he had participated in an interview, which he had not, and had been rejected from consideration for the position. *See* Pl.'s Mem. Opp. Mot. S. J. at Ex. 3, p. 23; Pl.'s L. R. 56(a) Stmt. at ¶49. Kellogg's admitted the error in sending that e-mail to Mr. Bunting and "subsequently corrected" that mistake. Def.'s L. R. 56(a) Stmt. at ¶¶51-52; Goss Decl. at ¶10.

Second, Mr. Bunting claims that Kellogg's departed from the procedure detailed in its Interviewer Handbook, requiring that interviewers "be consistent for all applicants as to whether a presentation is a part of the overall interview process." Kellogg's Interview Manual, Def.'s Exh. 2, ECF No. 36-2 at 10. As Mr. Bunting points out, only Mr. Linnell was given the opportunity to make a presentation when interviewing for the Warehouse Manager position. Pl.'s L. R. 56(a) Stmt. at ¶22; Pl.'s Mem. Opp. Mot. S. J. at p. 15, ¶6. Goss Decl. at 7.

Third, Mr. Bunting only received an interview after Kellogg's had interviewed Mr. Linnell for the one and only panel interview provided, supporting his contention that his interview was "ad hoc," rather than a good faith component of Kellogg's stated hiring procedure. Pl.'s Mem. Opp. Mot. S. J. at p. 6, ¶24; p. 15, ¶6. Specifically, he argues that Kellogg's only chose to interview him after his "persistent needling," and never seriously considered him for the position. Pl.'s Mem. Opp. Mot. S. J. at p. 5, ¶15.

While Mr. Bunting argues that these departures imply that he was never seriously considered for the Warehouse Manager position and should be considered evidence of pretext, there is nothing in the record that links Kellogg's hiring decision with the race of either Mr. Bunting or Mr. Linnell. A reasonable trier of fact is entitled to use procedural irregularities in a hiring process to support an inference of impermissible discrimination. *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 313 (2d Cir. 1997). However, the procedural irregularities must themselves contribute to the implication of discrimination in order for the plaintiff to survive summary judgment. *See id.* ("departures from procedural regularity [in hiring] can raise a question as to the good faith of the process where the departure may reasonably affect the decision."); *Bickerstaff v. Vassar College*, 196 F.3d 435, 453 (2d Cir. 1999) (approving of summary judgment when plaintiff failed to show that a procedural irregularity was "race-related").

Mr. Bunting may be correct that defendants did not seriously consider his application for the position. However, a reasonable jury could not, without further evidence, infer that they were motivated by his race. In *Stern*, the court held that a jury could reasonably draw an inference of discrimination because the defendant had initially "attempt[ed] to give the position summarily to a woman without following any of its usual procedures" and that a member of the search committee had stated that the defendant "needed more Hispanic [employees]." *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 311 (2d Cir. 1997). The record in *Stern* also contained evidence that Columbia had relied on non-Spanish speakers to evaluate plaintiff's Spanish language skills and had proceeded with "unusual rapidity" to hire a female candidate. *Id.* at 13. While Kellogg's rushed its hiring process to the benefit of Mr. Linnell, Mr. Bunting does not provide additional information that suggests that this haste was racially-motivated. In fact, there is nothing in the record about the race of any of the other

11

applicants and their treatment in the process, much less whether any of the other applicants were the same race as Mr. Bunting or the same race as Mr. Linnell.

In sum, Mr. Bunting has not raised a genuine issue of material fact as to whether the legitimate, nondiscriminatory reason proffered by Kellogg's for its hiring decision is a pretext for race discrimination.  Accordingly, the Court grants summary judgment on his race discrimination claim.

## B.  Age Discrimination

Mr. Bunting also argues that defendants discriminated against him on the basis of his age. Defendants, however, argue that Mr. Bunting failed to exhaust his administrative remedies and his age discrimination claim should be dismissed.  Def.'s Mem. Supp. Mot. S. J., ECF No. 35-1 at 11. Defendants note that Mr. Bunting did not describe his age discrimination claim in his initial charge with the EEOC.  In the alternative, defendants argue that they are entitled to summary judgment because plaintiff did not create a genuine issue of material fact about whether they treated him differently on account of his age.  *Id.*  For the reasons discussed below, the Court agrees that Mr. Bunting's age discrimination claim cannot survive summary judgment.

The ADEA "provides two alternative routes for pursuing a claim of age discrimination." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5 (1991).  First, an individual may exhaust the EEOC's administrative remedies and, if he is not satisfied with the outcome, later file a civil action in federal court. *See* 29 U.S.C. §§ 633a(b)-(c). Second, an individual may bypass the administrative complaint process entirely and present the merits of his claim directly to a federal court.  *See* 29 U.S.C. § 633a(d). When the individual opts for this second route, however, "no civil action may be commenced … until the individual has given the EEOC not less than thirty days' notice of [his or her] intent to file such action."  *Id.*

12

In this case, there is also a third route by which Mr. Bunting can administratively exhaust his ADEA claim.  This Court may exercise jurisdiction over Mr. Bunting's claim of age discrimination if it was "reasonably related" to the charge of race discrimination that he filed with the EEOC.  *See Stewart v. U. S. Immig. Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985).  A claim is reasonably related to an initial charge if "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Deravin v. Kerik*, 335 F.3d 195, 200-1 (2nd Cir. 2003).

Contrary to defendants' position, the relationship between the two charges is not determined by the boxes that the plaintiff checked on the initial EEOC form.  Rather, courts look to the "facts in the original EEOC charge" to see if they "sufficiently apprise the EEOC that another type of discrimination lurks in the background."  *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 458-59 (S.D.N.Y. 1998) ("[I]t is the substance of the charge and not its label that controls. … [W]e decline to hold that the failure to place a check mark in the correct box is a fatal error. In the context of Title VII, no one—not even the unschooled—should be boxed out.").

Mr. Bunting nevertheless has not administratively exhausted his ADEA claim.  His initial complaint did not describe allegations of age discrimination against Kellogg's.  *See* Charge of Discrimination.  He also does not allege that he gave the EEOC notice of his intent to sue under ADEA.  Finally, Mr. Bunting's EEOC form did not give the agency adequate notice of his claims of age discrimination.  *See Id.*  He does not mention Mr. Linnell's age in the complaint and does not mention age-related bias in his description of the "subtle and implicit biases" of defendants.  *Id.* Without a showing of "extraordinary circumstances," an ADEA plaintiff will be held to the

administrative requirements of the statute.  *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 1999).  As a result, the Court lacks jurisdiction over this claim and grants summary judgment on that basis.[1]

**IV.**     **Conclusion**

The Defendants' Motion for Summary Judgment [**Doc. No. 35**] is **GRANTED**.  The Clerk is directed to enter judgment for the defendants and close this case.

SO ORDERED at Bridgeport, Connecticut this 30th day of September, 2016.

_____
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[1] While the Court does not exercise jurisdiction over Mr. Bunting's ADEA claim, it notes that plaintiff has not pointed to evidence in the record of this case to create the inference that his age played a role in Kellogg's decision to hire Mr. Linnell.

14